# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ABC IP, LLC, a Delaware limited liability company, | ) ) ) | CASE NO. _____ |
| RARE BREED TRIGGERS, INC., a Texas corporation, | ) ) ) ) | **COMPLAINT FOR PATENT AND TRADEMARK INFRINGEMENT** |
| and | ) ) | |
| RBTM LLC, a Wyoming limited liability company, | ) ) ) | **JURY TRIAL DEMANDED** |
| Plaintiffs. | ) ) | |
| v. | ) ) ) | |
| Edward Gross, an individual, d/b/a Tactical Supply Depot and BamaLaser, | ) ) ) | |
| Defendant. | ) ) ) | |

This is an action for patent and trademark infringement in which ABC IP LLC ("ABC"), Rare Breed Triggers, Inc. ("Rare Breed"), and RBTM LLC ("RBTM") (collectively, "Plaintiffs") accuse Edward Gross d/b/a Tactical Supply Depot and BamaLaser ("Defendant") of infringing U.S. Patent Nos. 12,038,247, 12,031,784, 12,529,538, 12,578,159, 10,514,223, 11,724,003, 12,036,336, 12,274,807, and 12,636,403; infringing Plaintiffs' trademark rights; and engaging in unfair competition as follows:

## PARTIES

1. ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2. Rare Breed is a Texas corporation having a place of business at 2710 Central Freeway, Suite 150-151, Wichita Falls, TX 76306.

1

3.      RBTM is a limited liability company organized under the laws of the State of Wyoming with an address at 1309 Coffeen Avenue, STE 1200, Sheridan, Wyoming 82801.

4.      Upon information and belief, Edward Gross is an individual doing business as Tactical Supply Depot and BamaLaser. On information and belief, Gross resides at 11983 Camden Lane, Seneca, MO 64865, and operates as Tactical Supply Depot and BamaLaser at 1210 Cherokee Ave, Seneca, MO 64865.

## JURISDICTION AND VENUE

5.      This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)–(c), 281, and 284–85; trademark infringement; false designation of origin; and unfair competition under 15 U.S.C. §§ 1114 and 1125(a).

6.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

7.      Personal jurisdiction over Defendant is proper in Missouri because the Defendant is domiciled in and has a regular and established place of business in this District.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1400(b) because Defendant resides in or has committed acts of infringement and has a regular and established place of business in this District.

## BACKGROUND

9.      This lawsuit asserts (i) direct, contributory, and induced infringement of U.S. Patent Nos. 12,038,247 (the "'247 Patent"), 12,031,784 (the "'784 Patent"), 12,529,538 (the "'538 Patent"), 12,578,159 (the "'159 Patent"), 10,514,223 (the "'223 Patent"), 11,724,003 (the "'003 Patent"), 12,036,336 (the "'336 Patent"), 12,274,807 (the "'807 Patent"), and 12,636,403 (the

2

"'403 Patent") (together, "the Asserted Patents"); and (ii) trademark infringement, false designation of origin, and unfair competition with regard to Plaintiffs' well-known FRT trademark.

10. The '247 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. Each and every claim of the '247 Patent is valid and enforceable. A true and correct copy of the '247 Patent is attached as Exhibit A.

11. The '784 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 9, 2024. Each and every claim of the '784 Patent is valid and enforceable. A true and correct copy of the '784 Patent is attached as Exhibit B.

12. The '538 Patent was lawfully and properly issued by the United States Patent and Trademark Office on January 20, 2026. Each and every claim of the '538 Patent is valid and enforceable. A true and correct copy of the '538 Patent is attached as Exhibit C.

13. The '159 Patent was lawfully and properly issued by the United States Patent and Trademark Office on March 17, 2026. Each and every claim of the '159 Patent is valid and enforceable. A true and correct copy of the '159 Patent is attached as Exhibit D.

14. The '223 Patent was lawfully and properly issued by the United States Patent and Trademark Office on December 24, 2019. Each and every claim of the '223 Patent is valid and enforceable. A true and correct copy of the '223 Patent is attached as Exhibit E.

15. The '003 Patent was lawfully and properly issued by the United States Patent and Trademark Office on August 15, 2023. Each and every claim of the '003 Patent is valid and enforceable. A true and correct copy of the '003 Patent is attached as Exhibit F.

16. The '336 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. Each and every claim of the '336 Patent is valid and enforceable. A true and correct copy of the '336 Patent is attached as Exhibit G.

3

17. The '807 Patent was lawfully and properly issued by the United States Patent and Trademark Office on April 15, 2025. Each and every claim of the '807 Patent is valid and enforceable. A true and correct copy of the '807 Patent is attached as Exhibit H.

18. The '403 Patent was lawfully and properly issued by the United States Patent and Trademark Office on May 26, 2026. Each and every claim of the '403 Patent is valid and enforceable. A true and correct copy of the '403 Patent is attached as Exhibit I.

19. ABC is the current owner by assignment of all right, title and interest in and to the Asserted Patents. These assignments have been recorded at the United States Patent and Trademark Office ("USPTO").

20. RBTM is the owner, and Rare Breed has the exclusive right to enforce the trademark FRT® and variations thereon ("the FRT Marks"), including the right to enforce the marks against infringers. Since at least 2020, the FRT® mark has been used by Plaintiff Rare Breed to identify a unique trigger for firearms, which has been a remarkably successful offering. As a result of the long-term and high-profile use, the FRT® trademark has come to be uniquely identified with Rare Breed and a valuable identifier of Rare Breed's products. In addition to strong common law rights in the FRT® trademark, RBTM also owns the following federally registered trademarks and pending applications, including the right to enforce the marks against infringers:

| Mark | Goods | App. No. | Reg. No. | App. Date | Reg. Date |
|---|---|---|---|---|---|
| FRT | triggers for firearms | 97248519 | 8187914 | 2022-02-01 | 2026-03-24 |
| FRT-15 | triggers for firearms | 97245949 | 7004418 | 2022-01-31 | 2023-03-21 |
| FRT-22 | triggers for firearms | 97248530 | 8232406 | 2022-02-01 | 2026-04-28 |
| FRT-47 | triggers for firearms | 97248528 | 8232405 | 2022-02-01 | 2026-04-28 |
| FRT-MR3 | triggers for firearms | 99714625 | | 2026-03-20 | |

4

| FRT-RD3 | triggers for firearms | 99714703 | | 2026-03-20 | |
| FRT-15L3 | triggers for firearms | 98715335 | 8225451 | 2024-08-24 | 2026-04-21 |

Together, Plaintiffs' common law rights in and federal trademark registrations and pending applications are referred to as the "FRT Marks." The registrations for "FRT," "FRT-15," "FRT-22," "FRT-47," and "FRT-15L3" are Exhibits K, L, M, N, and O respectively.

21.     Rare Breed is the exclusive licensee of the Asserted Patents and the FRT Marks.

22.     Plaintiffs have complied with the requirements of 35 U.S.C. § 287 either because the Asserted Patents are not practiced by ABC or any licensee and/or because any licensee has been required to mark its product.

23.     Upon information and belief, Defendant has committed acts of direct, contributory, and induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

## THE INVENTIONS

24.     A typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a *standard disconnector* AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of the bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces

5

pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

25. In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

26. In contrast, in what Plaintiffs have coined a "forced reset" trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be mechanically moved to the reset position and to be held there until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

27. The '247 and '159 Patents provide a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow an accelerated rate of semiautomatic firing. The device can be selected to operate in either a standard semiautomatic mode or a "forced reset" semiautomatic mode and uses a cam, rotated by cycling of the action, to cause the trigger member to reset and prevent the trigger member from being pulled again until the action has returned to the in-battery position.

28. The '784 Patent provides a device that works in a trigger system as an extended trigger member locking mechanism for use with a semi-automatic firearm that employs, in some embodiments, a "deflectable extension of the locking member that is actuated by forward

6

movement of the bolt carrier," among other innovations as explicitly claimed. Certain inventions of the '784 Patent overcome the geometric limitations of prior art designs for use in multiple and varied semi-automatic firearm designs by allowing a locking member to deflect or fold separately from the body portion of the locking member when contacted by the forward portion of the bolt carrier as it cycles to the rear.

29. The '538 Patent provides a safety mechanism for a firearm that employs a cam selector, a lever, and a trigger. The cam selector contains multiple recesses and is configured to operate between a first mode, a second mode, and a third mode. In the first mode, a portion of the trigger referred to as a first trigger tail portion is movable within the first recess. In the second mode, the first trigger tail portion is allowed to engage the second recess and be moved down by a cam portion of the second recess when the cam selector rotates. In the third mode, the cam selector is configured to prevent the trigger from being pulled.

30. The '223 Patent describes and claims a device in which the cycling of the action causes hammer contact with the trigger member to mechanically reset the hammer and trigger member. A locking bar prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position.

31. The '003 Patent, the '336 Patent, the '807 Patent, and the '403 Patent describe and claim a similarly operating device with the additional feature that it can be selected to operate in either of two distinct modes: 1) standard disconnector semiautomatic mode and 2) "forced reset" semiautomatic mode.

32. The claims of the patents define the scope of the patented inventions.

CORE/3536140.0008/247833044.2

33. On information and belief, Defendant previously or is currently making, using, selling, and/or offering for sale products that embody the technology claimed in the Asserted Patents, including the following (collectively, the "Infringing Devices"):

## I. The Super Safety

34. On information and belief, Defendant previously or is currently making, using, selling, and/or offering for sale a (3-Position) "Fast Trigger" (the "Super Safety"), which embodies the technology claimed in at least the '247, '784, '538, '159, and '403 Patents.

35. On information and belief, Defendant previously or is currently making, using, selling, and/or offering for sale the Super Safety, in multiple variants, including at least a partial kit, which includes at minimum the cam and cam lever components, and may further include one or more additional components—when these components are installed in combination with a standard AR-pattern hammer and disconnector, with standard springs, the combination creates the invention of the '247, '784, '538, '159, and '403 Patents.

36. On information and belief, Defendant previously or is currently making, using, selling, and/or offering for sale the Super Safety via the website https://bamalaser.com/shop.

37. Exemplary images are shown below:

CORE/3536140.0008/247833044.2





CORE/3536140.0008/247833044.2



38.     The Super Safety can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and "forced reset" semiautomatic with cam modes by moving the safety selector laterally between positions.

## II.     <u>The Kubota</u>

39.     On information and belief, Defendant previously or is currently making, using, selling, and/or offering for sale a Kubota device (the "Kubota"), which embodies the technology claimed in at least the '247, '784, '159, and '403 Patents.

40.     On information and belief, Defendant previously or is currently making, using, selling, and/or offering for sale the Kubota via the website https://bamalaser.com/shop.

41.     An exemplary image is shown below:

CORE/3536140.0008/247833044.2



42.     The Kubota can operate in at least a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between standard semiautomatic with disconnector and "forced reset" semiautomatic with cam modes by rotating the safety selector between positions.

## III.    The Selektor

43.     On information and belief, Defendant previously or is currently making, using, selling, and/or offering for sale a (3-Position) Selektor ("the Selektor"), which embodies the technology claimed in at least the '223, '003, '336, '807, and '403 Patents.

44.     On information and belief, Defendant previously or is currently making, using, selling, and/or offering for sale the Selektor, in multiple variants, including at least as a standalone product.

45.     Exemplary images are shown below:

CORE/3536140.0008/247833044.2



The "Selektor". That Bama Laser guy has a box of em. His name is Ed

46. The Selektor also operates in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and "forced reset" semiautomatic with cam modes by moving the safety selector between positions.

47. When the Selektor operates in the "forced reset" mode, the cycling of the action causes hammer contact with the trigger member to mechanically reset the hammer and trigger member. A locking bar/member prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position.

48. When in the standard semi-automatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm again.

12

CORE/3536140.0008/247833044.2

49. When in the "forced reset" semi-automatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be moved to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

## IV.    Infringement of the FRT Marks

50. On information and belief, Defendant is distributing, advertising, and/or selling products that do not originate with Plaintiffs but that nonetheless bear or are promoted in association with the FRT Marks.

51. Defendant is falsely associating its products with Plaintiffs' well-known FRT Marks.

52. Defendant is advertising its products as "FRT" as shown at: https://bamalaser.com/shop/ols/search?keywords=FRT&sortOption=descend_by_match.

Exemplary highlighted images are shown below:

CORE/3536140.0008/247833044.2



4796449213

HOME    SHOP    CONTACT US

All Products

AK-47 Parts

AR Colored
Master Build Kits

AR Parts

Buffer

CERAKOATED
UPPERS

Cork Coasters

FAST TRIGGERS

Glock Parts

You searched for "FRT"    2 results





AK 47 FRT Set

$90.00



H3 SLEDGEHAMMER AR-
15 Heavy Carbine Buffer,
Best for FRT

$49.00

53.     Despite Defendant's marketing, Defendant's products are not one of Plaintiffs' FRT products.

54.     Defendant's unauthorized use of the FRT Marks to identify and promote its products is likely to mislead consumers into falsely believing that Defendant's products are in fact Plaintiffs' products, or are endorsed by or associated with Plaintiffs.

55.     The only reason Defendant would use the FRT Marks in connection with its products is to trade on the goodwill Plaintiffs have developed in the FRT Marks, and thus Defendant's conduct is willful.

14

## COUNT I – INFRINGEMENT OF THE '247 PATENT

56. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

57. In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '247 Patent, including but not limited to claim 15, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '247 Patent. Such unlicensed products include the Super Safety and Kubota.

58. On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '247 Patent, including but not limited to claim 15, literally and/or under the doctrine of equivalents.

59. An exemplary comparison of the Super Safety, when assembled and used as intended, with claim 15 of the '247 Patent, is illustrated in the chart below:

| '247 Patent, Claim 15 | The Super Safety |
|---|---|
| 15. A firearm trigger mechanism comprising: | When installed and used as directed, the Super Safety is part of a trigger mechanism and functions as a cam that in at least one mode, both causes the reset of the trigger and locks the trigger during the cycle of operation. |

CORE/3536140.0008/247833044.2

| '247 Patent, Claim 15 | The Super Safety |
|---|---|
| | **The Super Safety**<br><br>*See also*, Ex. J, Super Safety 3D Printed Active Trigger System v4.4, ("Super Safety Guide") at 12. |
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Super Safety (yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (red) that has a sear catch and a hook for engaging a disconnector (orange). |

16

| '247 Patent, Claim 15 | The Super Safety |
|---|---|
| |  (Plaintiff-generated renderings of the Super Safety here and below) |
| to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The hammer (red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier. **Hammer Set Position** |

17

| '247 Patent, Claim 15 | The Super Safety |
|---|---|
| | **Hammer Released Position** |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Super Safety (yellow) is installed with a trigger member (brown) in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions. The trigger member (brown) has a sear. |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear of the trigger member (brown) and sear catch of the hammer (red) are in engagement when the hammer and trigger member are in their set positions. |

18

| '247 Patent, Claim 15 | The Super Safety |
|---|---|
| | **Trigger Member Set Position** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear of the trigger member (brown) and sear catch of the hammer (red) are out of engagement in the released position. **Trigger Member Released Position** |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnector (orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (red). |

19

| '247 Patent, Claim 15 | The Super Safety |
|---|---|
| | **Disconnector Hook Engaged** |
| and a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The Super Safety has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* image above depicting Super Safety, shown in yellow, in fire control mechanism pocket) **Super Safety Cam with Lobe and Lever** |
| said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The cam is movable between a first position and a second position. |

CORE/3536140.0008/247833044.2

| '247 Patent, Claim 15 | The Super Safety |
|---|---|
| | <br><br>**Cam and Lobe First Position**<br><br>In the second position, the cam lobe mechanically moves the trigger member (brown) toward the set position when the cam is in the "forced reset" semi-automatic mode.<br><br>**Cam and Lobe Second Position** |

CORE/3536140.0008/247833044.2

| | |
|---|---|
| whereupon in a standard semi-automatic mode, | During at least part of the cycle in the standard semi-automatic mode,<br><br> |
| said cam is in said first position, | . . . the cam is in the first position.<br><br> |
| rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | Rearward movement of the bolt carrier causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook catches the hammer hook.<br><br> |

22

CORE/3536140.0008/247833044.2

| | |
|---|---|
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery,<br><br> |
| at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | . . . at which time a user must manually release the trigger member (brown) to free said hammer (red) from the disconnector (orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm.<br><br> |

CORE/3536140.0008/247833044.2

| | |
|---|---|
| whereupon in a forced reset semi-automatic mode, | When in the "forced reset" semi-automatic mode,<br><br> |
| said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, | . . . the cam is in the second position during at least part of the cycle and mechanically moves the trigger member toward the set position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook is prevented from catching the hammer hook.<br><br> |

CORE/3536140.0008/247833044.2

| | |
|---|---|
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery,<br><br> |
| at which time the user can pull said trigger member to fire the firearm. | . . . at which time the user can pull the trigger member (brown) to fire the firearm. |

60. An exemplary comparison of the Kubota, when assembled and used as intended, with claim 15 of the '247 Patent, is illustrated in the chart below:

CORE/3536140.0008/247833044.2

| '247 Patent, Claim 15 | The Kubota |
|---|---|
| 15. A firearm trigger mechanism comprising: | When installed and used as directed, the Kubota is part of a reset trigger mechanism and functions as a cam that in at least one mode, both causes the reset of the trigger and locks the trigger during the cycle of operation.<br><br><br><br>**Kubota** |

CORE/3536140.0008/247833044.2

| '247 Patent, Claim 15 | The Kubota |
|---|---|
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Kubota (green, blue, and purple) is installed in a fire control mechanism pocket of a receiver along with a hammer (red) that has a sear catch and a hook for engaging a disconnector (orange).<br><br><br><br>(Plaintiff-generated renderings of Kubota here and below) |

27

| '247 Patent, Claim 15 | The Kubota |
|---|---|
| to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The hammer (red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier.<br><br><br>**Hammer Set Position**<br><br>**Hammer Released Position** |

CORE/3536140.0008/247833044.2

| '247 Patent, Claim 15 | The Kubota |
|---|---|
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Kubota (green, blue, and purple) is installed with a trigger member (brown) in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions. The trigger member (brown) has a sear.  |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear of the trigger member (brown) and sear catch of the hammer (red) are in engagement when the hammer and trigger member are in their set positions.  **Trigger Member Set Position** |

29

CORE/3536140.0008/247833044.2

| '247 Patent, Claim 15 | The Kubota |
|---|---|
| and are out of engagement in said released positions of said hammer and trigger member, | The sear of the trigger member (brown) and sear catch of the hammer (red) are out of engagement in the released position.<br><br>**Trigger Member Released Position** |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnector (orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (red).<br><br>**Disconnector Hook Engaged** |

30

| '247 Patent, Claim 15 | The Kubota |
|---|---|
| and a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The Kubota has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* Image above depicting Kubota, shown in green, blue, and purple, in fire control mechanism pocket)<br><br>**Kubota Cam with Lobe and Lever** |

CORE/3536140.0008/247833044.2

| '247 Patent, Claim 15 | The Kubota |
|---|---|
| said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The cam is movable between a first position and a second position.<br><br>**Cam and Lobe First Position**<br><br>In the second position, the cam (green) lobe moves the trigger member (brown), via a link (blue), toward the set position when the cam is in the "forced reset" semi-automatic mode.<br><br>**Cam and Lobe Second Position** |

32

CORE/3536140.0008/247833044.2

| '247 Patent, Claim 15 | The Kubota |
|---|---|
| whereupon in a standard semi-automatic mode, | During at least part of the cycle in the standard semi-automatic mode, |
| said cam is in said first position, | . . . the cam (green) is in the first position. |

CORE/3536140.0008/247833044.2

| '247 Patent, Claim 15 | The Kubota |
|---|---|
| rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | Rearward movement of the bolt carrier causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook catches the hammer hook.<br> |
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery,<br> |

34

CORE/3536140.0008/247833044.2

Case 3:26-cv-05070-DPR    Document 1    Filed 08/05/26    Page 34 of 136

| '247 Patent, Claim 15 | The Kubota |
|---|---|
| at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | . . . at which time a user must manually release the trigger member (brown) to free said hammer (red) from the disconnector (orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm.<br><br> |
| whereupon in a forced reset semi-automatic mode, | When in the "forced reset" semi-automatic mode,<br><br> |

35

CORE/3536140.0008/247833044.2

| '247 Patent, Claim 15 | The Kubota |
|---|---|
| said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, | . . . the cam is in the second position during at least part of the cycle and moves the trigger member toward the set position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook is prevented from catching the hammer hook.<br> |
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery,<br> |

CORE/3536140.0008/247833044.2

| '247 Patent, Claim 15 | The Kubota |
|---|---|
| at which time the user can pull said trigger member to fire the firearm. | . . . at which time the user can pull the trigger member (brown) to fire the firearm.<br> |

61.     On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '247 Patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Super Safety and Kubota.

62.     On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 15 of the '247 Patent.

63.     On information and belief, Defendant also contributes to the infringement of the '247 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Super Safety and Kubota, such as the cam or cam lever arm.

CORE/3536140.0008/247833044.2

The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '247 Patent.

64. Defendant has engaged in egregious infringement behavior with knowledge of the '247 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '247 Patent and that the '247 Patent is valid at least through the service of Plaintiffs' Complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '247 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '247 Patent.

65. By its actions, Defendant has injured Plaintiffs and is liable to Plaintiffs for infringement of the '247 Patent pursuant to 35 U.S.C. § 271.

66. By its actions, Defendant's infringement of the '247 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

67. By its actions, Defendant's infringement of the '247 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

68. Defendant's infringement of the '247 Patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

69. Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

38

70. Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT II – INFRINGEMENT OF THE '784 PATENT

71. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

72. In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '784 Patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '784 Patent. Such unlicensed products include the Super Safety and Kubota.

73. On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '784 Patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

74. An exemplary comparison of the Super Safety, when assembled and used as intended, with claim 1 of the '784 Patent is illustrated in the chart below:

| '784 Patent, Claim 1 | Infringing Device (Super Safety) |
|---|---|
| 1. In a forced reset trigger mechanism, an extended trigger member locking device, comprising: | When installed and used as directed, the Super Safety is part of a forced reset trigger mechanism and functions as an extended trigger member locking device. |

CORE/3536140.0008/247833044.2

| '784 Patent, Claim 1 | Infringing Device (Super Safety) |
|---|---|
| |  **Super Safety** Ex. J, Super Safety Printed Active Trigger System v4.4, Hoffman Tactical (July 19, 2023) ("Super Safety Guide") at 12 |

40

| '784 Patent, Claim 1 | Infringing Device (Super Safety) |
|---|---|
| | **Super Safety Installed**<br>(Plaintiff-generated renderings of Super Safety here and below; Locking member and bolt carrier shown here and below in section view for clarity)<br><br>"The Super Safety is a mechanism that actively resets the trigger of a firearm to allow the operator to fire again, quickly, and efficiently. The Super Safety has been designed to operate with AR-15 pattern firearms that use a mil-spec bolt carrier and fire control group." Ex. J, Super Safety Guide at 1. |
| a locking member that is movable between a first position in which it locks a trigger against pulling movement | The Super Safety operates as a locking member and has a first position in which the Super Safety locks the trigger member against pulling movement. |

41

CORE/3536140.0008/247833044.2

| '784 Patent, Claim 1 | Infringing Device (Super Safety) |
|---|---|
| | <br>**Locked First Position** |
| and a second position where it does not restrict movement of the trigger member, | The Super Safety is moveable from the first position to a second position where it does not restrict movement of the trigger member.<br><br><br>**Unlocked Second Position** |

42

CORE/3536140.0008/247833044.2

| | |
|---|---|
| the locking member configured to be movably supported by a frame | The Super Safety is movably (pivotally about the axis depicted below) supported by a frame (the lower receiver).<br><br><br><br> |
| and including a generally upward extension portion configured to make actuating contact with a surface of the bolt carrier, | The Super Safety has an upward extending portion (lever arm) configured to make actuating contact with a surface of the bolt carrier.<br><br> |

43

| | |
|---|---|
| such actuating contact causing the locking member to move from the first position to the second position, | The actuating contact causes the locking member to move from the first position to the second position.<br><br><br><br>**Unlocked Second Position** |
| the locking member having a body portion that is movably supported | The Super Safety has a body portion that is movably supported by the lower receiver.<br><br> |

44

| | |
|---|---|
| and an upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position | The Super Safety has an upwardly extending deflectable portion (lever arm). The dovetail connection is designed to allow separate movement of the lever arm relative to the body portion between one position (depicted in red) where it is extended and another position where it is deflected (depicted in green). |
| |  |
| | Below illustrates the upward extending deflectable portion's (lever arm) total separate travel with an overlay of the lever in both positions without the body portion moving. |
| |  |
| | "The dovetail joint does not immediately transfer torque from the lever to the cam. The lever pivots in the cam until the void is filled. Once the void is filled |

45

| | |
|---|---|
| | the hammer can transfer torque to the cam via the upper and lower contact surfaces[.] Note that the void, the lower contact surface, and the upper contact surface, are shown on arbitrary sides of the dovetail, these features may be on either side of the dovetail depending on which direction the lever is moving. The amount that the lever rotates in the dovetail before transferring torque to the cam is such that as the bolt carrier completes its forward movement, the cam rotates the neutral surface away from the cam follower and to a point where the cam follower begins to slide against the cam surface." (reference numerals removed for clarity). Ex. J, Super Safety Guide at 4. https://www.scribd.com/document/843484122/Super-Safety-Documentation |
| and a deflected position. | The lever is now shown deflected independent of the body. |

75. An exemplary comparison of the Kubota, when assembled and used as intended, with claim 1 of the '784 Patent is illustrated in the chart below:

| '784 Patent, Claim 1 | The Kubota |
|---|---|
| 1. In a forced reset trigger mechanism, an extended trigger member locking device, comprising: | When installed and used as directed, the Kubota is part of a reset trigger mechanism and functions as an extended trigger member locking device. |

CORE/3536140.0008/247833044.2

| '784 Patent, Claim 1 | The Kubota |
|---|---|
| |  **The Kubota** **Kubota Installed** (Plaintiff-generated renderings of Kubota here and below) |

CORE/3536140.0008/247833044.2

| | |
|---|---|
| a locking member that is movable between a first position in which it locks a trigger against pulling movement | The Kubota (yellow, blue, and purple) operates as a locking member and has a first position in which the Kubota locks the trigger member against pulling movement.<br><br><br><br>**Locked First Position** |
| and a second position where it does not restrict movement of the trigger member, | The Kubota (yellow, blue, and purple) is moveable from the first position to a second position where it does not restrict movement of the trigger member.<br><br><br><br>**Unlocked Second Position** |

48

CORE/3536140.0008/247833044.2

| | |
|---|---|
| the locking member configured to be movably supported by a frame | The Kubota (yellow, blue, and purple) is movably (pivotally about the axis depicted below) supported by a frame (purple). |
| and including a generally upward extension portion configured to make actuating contact with a surface of the bolt carrier, | The Kubota (yellow, blue, and purple) has an upward extending portion (the "lever arm," yellow) configured to make actuating contact with a surface of the bolt carrier. |

49

| | |
|---|---|
| |  |
| such actuating contact causing the locking member to move from the first position to the second position, | The actuating contact causes the locking member to move from the first position to the second position.<br><br><br><br>**Unlocked Second Position** |

CORE/3536140.0008/247833044.2

| | |
|---|---|
| the locking member having a body portion that is movably supported | The Kubota (yellow, blue, and purple) has a body portion (blue) that is movably supported by a housing (purple).<br><br> |
| and an upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position | The Kubota (yellow, blue, and purple) has an upwardly extending deflectable portion (lever arm).<br><br><br><br>The below illustrates the lever arm's (upward extending deflectable portion) total separate travel with an overlay of the lever in both positions without the body portion moving. |

51

| | |
|---|---|
|  | |
| and a deflected position. | The lever is now shown deflected independent of the body. |

76. On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '784 Patent.

CORE/3536140.0008/247833044.2

Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Super Safety and Kubota while selling products.

77. On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 1 of the '784 Patent.

78. On information and belief, Defendant also contributes to the infringement of the '784 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Super Safety and Kubota, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '784 Patent.

79. Defendant has engaged in egregious infringement behavior with knowledge of the '784 Patent, which has been duly issued by the USPTO and is presumed valid. On information and belief, Defendant knows or should have known that its actions constituted and continue to constitute infringement of the '784 Patent and that the '784 Patent is valid at least through the service of Plaintiffs' Complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '784 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '784 Patent.

53

80. By its actions, Defendant has injured Plaintiffs and is liable to Plaintiffs for infringement of the '784 Patent pursuant to 35 U.S.C. § 271.

81. By its actions, Defendant's infringement of the '784 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

82. By its actions, Defendant's infringement of the '784 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

83. Defendant's infringement of the '784 Patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

84. Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

85. Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT III — INFRINGEMENT OF THE '538 PATENT

86. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

87. In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '538 Patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '538 Patent. Such unlicensed products include the Super Safety.

CORE/3536140.0008/247833044.2

88. On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '538 Patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

89. An exemplary comparison of the Super Safety, when assembled and used as intended, with claim 1 of the '538 Patent is illustrated in the chart below:

| '538 Patent, Claim 1 | The Super Safety |
|---|---|
| 1. A safety mechanism for a firearm comprising: | The Super Safety is part of a trigger mechanism installed into a firearm receiver in place of a standard safety.<br><br><br><br>**(Super Safety)**<br>Ex. J, Super Safety 3D Printed Active Trigger System v4.4, Hoffman Tactical (July 19, 2023) ("Super Safety Guide") at 12. |

CORE/3536140.0008/247833044.2

| '538 Patent, Claim 1 | The Super Safety |
|---|---|
| | **Super Safety Installed** (Plaintiff-generated renderings of Super Safety here and below; cam selector and bolt carrier shown in section view for clarity) |
| a cam selector; | The Super Safety includes a dual mode cam selector that allows for selection of safe, active reset, and passive reset modes. **Dual Mode Cam Selector** Ex. J, Super Safety Guide at 1. |

CORE/3536140.0008/247833044.2

| '538 Patent, Claim 1 | The Super Safety |
|---|---|
| | |
| a lever; | The Super Safety has a lever (pink) extending upward from the cam selector. |
| a trigger; | The cam selector operates on a trigger. (brown) |

CORE/3536140.0008/247833044.2

| '538 Patent, Claim 1 | The Super Safety |
|---|---|
| the cam selector comprising a first end, a second end, a top side, and a bottom side; | The Super Safety dual mode cam selector has two ends, a top side, and a bottom side as illustrated below. |
| the cam selector comprising a longitudinal slot positioned on the top side of the cam selector; | The Super Safety dual mode cam selector comprises a longitudinal slot that is positioned on the top side and extends along the cam selector. |
| the lever comprising a proximal end and a distal end; | The Super Safety lever (pink) has a proximal end and a distal end, as illustrated below. |

CORE/3536140.0008/247833044.2

| '538 Patent, Claim 1 | The Super Safety |
|---|---|
| the longitudinal slot being configured to receive the proximal end of the lever; | The longitudinal slot on the top side of the cam selector (yellow) is configured to receive the proximal end of the lever (pink).<br><br><br><br>Ex. J, Super Safety Guide at 12<br><br>**Super Safety Installed** |

CORE/3536140.0008/247833044.2

| '538 Patent, Claim 1 | The Super Safety |
|---|---|
| the cam selector further comprising a first recess and a second recess on the bottom side of the cam selector; | The Super Safety dual mode cam selector has a first recess and a second recess on the bottom side of the cam. |
| the trigger comprising a first trigger tail portion; | The Super Safety dual mode trigger has a first trigger tail portion, shown in the red box below.<br><br>Ex. J, Super Safety Guide at 10. |

CORE/3536140.0008/247833044.2

| '538 Patent, Claim 1 | The Super Safety |
|---|---|
| | |
| the cam selector being configured to operate between a first mode, a second mode, and a third mode; | The Super Safety dual mode cam is operable in three modes: (1) passive reset (standard semi-automatic) (2) active reset, and (3) safe. Ex. J, Super Safety Guide at 1. |
| wherein the first mode of the cam selector is configured to allow the first trigger tail portion to be movable within the first recess, | The Super Safety dual mode cam selector is operable in standard semi-automatic mode, in which the first trigger tail aligns with the first recess of the cam.<br><br><br><br>**Standard Semi-Automatic Mode**<br><br>When the cam selector is in the first mode, the first trigger tail portion is movable within the first recess of the cam. |

61

Case 3:26-cv-05070-DPR    Document 1    Filed 08/05/26    Page 61 of 136

| '538 Patent, Claim 1 | The Super Safety |
|---|---|
| |  **Super Safety Installed** **Super Safety Installed, Trigger Pulled, Lever and Cam Rotated** |

62

| '538 Patent, Claim 1 | The Super Safety |
|---|---|
| wherein the second mode of the cam selector is configured to allow the first trigger tail portion to engage the second recess | The Super Safety dual mode cam selector is operable in active reset mode, in which the first trigger tail aligns with the second recess of the cam.<br><br><br><br>**Active Reset Mode** |
| and be moved down by a cam portion of the second recess when the cam selector rotates, | In the second mode, when the cam is rotated by the lever, the cam selector portion of the second recess moves the first trigger tail portion down.<br><br><br><br>**Super Safety Installed, Trigger Pulled** |

63

CORE/3536140.0008/247833044.2

| '538 Patent, Claim 1 | The Super Safety |
|---|---|
| |  **Super Safety Installed, Lever and Cam Rotated**  |
| and wherein the third mode of the cam selector is configured to prevent the trigger from being pulled. | The Super Safety dual mode cam is operable in safe mode, in which the first trigger tail portion does not align with a recess in the cam. The trigger is not movable within a recess of the cam, and the cam therefore prevents the trigger from being pulled.  |

64

| '538 Patent, Claim 1 | The Super Safety |
| --- | --- |
| | <br>First trigger<br>tail portion |

90. On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '538 Patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Super Safety while selling products.

91. On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 1 of the '538 Patent.

92. On information and belief, Defendant also contributes to the infringement of the '538 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Super Safety, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '538 Patent.

CORE/3536140.0008/247833044.2

93. Defendant has engaged in egregious infringement behavior with knowledge of the '538 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '538 Patent and that the '538 Patent is valid at least through the service of Plaintiffs' Complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '538 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '538 Patent.

94. By its actions, Defendant has injured Plaintiffs and are liable to Plaintiffs for infringement of the '538 Patent pursuant to 35 U.S.C. § 271.

95. By its actions, Defendant's infringement of the '538 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

96. By its actions, Defendant's infringement of the '538 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

97. Defendant's infringement of the '538 Patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

98. Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

99. Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction,

CORE/3536140.0008/247833044.2

damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT IV — INFRINGEMENT OF THE '159 PATENT

100. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

101. In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '159 Patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '159 Patent. Such unlicensed products include the Super Safety and Kubota.

102. On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '159 Patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

103. An exemplary comparison of the Super Safety, when assembled and used as intended, with claim 1 of the '159 Patent is illustrated in the chart below:

| '159 Patent, Claim 1 | The Super Safety |
|---|---|
| 1. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | When installed and used as directed, the Super Safety is part of a trigger mechanism that uses a bolt means. With the Super Safety installed, the trigger mechanism operates in a standard semi-automatic mode and a "forced reset" semi-automatic mode |

CORE/3536140.0008/247833044.2

| '159 Patent, Claim 1 | The Super Safety |
| --- | --- |
| |

**Super Safety**

Ex. J, Super Safety 3D Printed Active Trigger System v4.4, Hoffman Tactical (July 19, 2023) ("Super Safety Guide") at 12. |

CORE/3536140.0008/247833044.2

| '159 Patent, Claim 1 | The Super Safety |
|---|---|
| | <br><br>**Super Safety** (**Installed**)<br><br>(Plaintiff-generated renderings of the Super Safety here and below) |
| a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Super Safety (yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (red) that has a sear surface and a hook for engaging a disconnector (orange).<br><br><br><br>**Super Safety** (**Installed**) |
| to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt means, | The hammer (red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt means. |

69

| '159 Patent, Claim 1 | The Super Safety |
|---|---|
| | **Hammer Set Position**<br><br>**Hammer Released Position** |
| a trigger member having a trigger sear surface and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis | The Super Safety (yellow) is installed with a trigger member (brown) in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions. The trigger member has a sear surface. |

70

| '159 Patent, Claim 1 | The Super Safety |
|---|---|
| between set and<br><br>released positions, | <br>**Trigger Member Set Position**<br><br><br>**Trigger Member Released Position** |
| wherein the trigger member sear surface and hammer sear surface are in engagement in the set positions of the hammer and trigger member | The sear surface of the trigger member (brown) and sear surface of the hammer (red) are in engagement when the hammer and trigger member are in their set positions. |

71

| '159 Patent, Claim 1 | The Super Safety |
|---|---|
| | **Trigger Member and Hammer Member Set Position** |
| and are out of engagement in the released positions of the hammer and trigger member, | The sear surface of the trigger member (brown) and sear catch surface of the hammer (red) are out of engagement in the released position. **Trigger Member and Hammer Member Released Positions** |
| the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a | The disconnector (orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (red). |

72

| '159 Patent, Claim 1 | The Super Safety |
|---|---|
| transverse disconnector pivot axis, and | <br>**Disconnector Hook Engaged** |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The Super Safety has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* image above depicting Super Safety, shown in yellow, in fire control mechanism pocket)<br><br><br>**Super Safety Cam with Lobe and Lever** |

CORE/3536140.0008/247833044.2

| | |
|---|---|
| the cam being movable between a first position and a second position, in the second position the cam lobe forces the trigger member toward the set position, | The cam is movable between a first position and a second position.<br><br><br><br>**Cam and Lobe First Position**<br><br>In the second position, the cam lobe mechanically moves the trigger member (brown) toward the set position when the cam is in the "forced reset" semi-automatic mode.<br><br><br><br>**Cam and Lobe Second Position** |

CORE/3536140.0008/247833044.2

| | |
|---|---|
| whereupon in the first mode, | While in the first (standard semi-automatic) mode, |
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, | . . . rearward movement of the bolt means causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook catches the hammer hook.<br><br>**Disconnector Hook Catches the Hammer** |
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery, |

75

CORE/3536140.0008/247833044.2

| | |
|---|---|
| <br>**Pressure on Trigger Member Prevents Reset** | |
| at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger | . . . at which time a user must manually reduce pressure on the trigger member (brown) to free the hammer (red) from the disconnector (orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. |

CORE/3536140.0008/247833044.2

| | |
|---|---|
| member to fire the firearm, and | **Reduced Pressure on Trigger Member Allows Reset** |
| whereupon in a second mode,<br><br>rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook is prevented from holding the hammer, | When in the second ("forced reset" semi-automatic) mode,<br><br><br><br>Rearward movement of the bolt means causes rearward pivoting of the hammer (red) and the cam to mechanically move the trigger member toward the reset position such that the disconnector (orange) hook is prevented from holding the hammer hook. |

CORE/3536140.0008/247833044.2



| | |
|---|---|
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery and the hammer moves to its reset position, |

78

| | |
|---|---|
| at which time the user can pull the trigger member to fire the firearm. | . . . at which time the user can pull the trigger member (brown) to fire the firearm without having to first release pressure on the trigger member. |

104. An exemplary comparison of the Kubota, when assembled and used as intended, with claim 1 of the '159 Patent is illustrated in the chart below:

| '159 Patent, Claim 1 | The Kubota |
|---|---|
| 1. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | When installed and used as directed, the Kubota is part of a trigger mechanism that uses a bolt means, for example, a bolt carrier assembly or a blow-back bolt. With the Kubota installed, the trigger mechanism operates in a standard semi-automatic mode and a "forced reset" semi-automatic mode |

CORE/3536140.0008/247833044.2

| '159 Patent, Claim 1 | The Kubota |
|---|---|
| | **Kubota** |
| a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Kubota (yellow, blue, and purple) is installed in a fire control mechanism pocket of a receiver along with a hammer (red) that has a sear surface and a hook for engaging a disconnector (orange). (Plaintiff-generated renderings of Kubota here and below) |
| to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt means, | The hammer (red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt means. |

80

| '159 Patent, Claim 1 | The Kubota |
|---|---|
| |

**Hammer Set Position**

**Hammer Released Position** |
| a trigger member having a trigger sear surface and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis | The Kubota (yellow, blue, and purple) is installed with a trigger member (brown) in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions. The trigger member has a sear surface. |

81

| | |
|---|---|
| between set and | **Trigger Member Set Position** |
| released positions, | **Trigger Member Released Position** |
| wherein the trigger member sear surface and hammer sear surface are in engagement in the set positions of the hammer and trigger member | The sear surface of the trigger member (brown) and sear surface of the hammer (red) are in engagement when the hammer and trigger member are in their set positions. |

CORE/3536140.0008/247833044.2

| | |
|---|---|
| | <br>**Trigger Member and Hammer Member Set Position** |
| and are out of engagement in the released positions of the hammer and trigger member, | The sear surface of the trigger member (brown) and sear catch surface of the hammer (red) are out of engagement in the released position.<br><br><br>**Trigger Member and Hammer Member Released Positions** |
| the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | The disconnector (orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (red). |

CORE/3536140.0008/247833044.2



**Disconnector Hook Engaged**

| | |
|---|---|
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The Kubota has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* Image above depicting Kubota, shown in green, blue, and purple, in fire control mechanism pocket) |

84



**Kubota Cam with Lobe and Lever**

| | |
|---|---|
| the cam being movable between a first position and a second position, in the second position the cam lobe forces the trigger member toward the set position, | The cam is movable between a first position and a second position.<br><br><br><br>**Cam and Lobe First Position**<br><br>In the second position, the cam lobe moves the trigger member (brown) toward the set position when the cam is in the "forced reset" semi-automatic mode. |

| | |
|---|---|
| | **Cam and Lobe Second Position** |
| whereupon in the first mode, | While in the first (standard semi-automatic) mode, |
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, | . . . rearward movement of the bolt means causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook catches the hammer hook. |

86

CORE/3536140.0008/247833044.2

| | |
|---|---|
| | **Disconnector Hook Catches the Hammer** |
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery, **Pressure on Trigger Member Prevents Reset** |
| at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger | . . . at which time a user must manually reduce pressure on the trigger member (brown) to free the hammer (red) from the disconnector (orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. |

87

| | |
|---|---|
| member to pivot to the set positions so that the user can pull the trigger member to fire the firearm, and | <br><br>**Reduced Pressure on Trigger Member Allows Reset** |
| whereupon in a second mode, | When in the second ("forced reset" semi-automatic) mode,<br><br> |

CORE/3536140.0008/247833044.2

| | |
|---|---|
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook is prevented from holding the hammer, | . . . rearward movement of the bolt means causes rearward pivoting of the hammer (red) and the cam (yellow) acting on the link (blue) to move the trigger member toward the reset position such that the disconnector (orange) hook is prevented from holding the hammer hook.<br><br> |
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery and the hammer moves to its reset position,<br><br> |

CORE/3536140.0008/247833044.2

| at which time the user can pull the trigger member to fire the firearm. | . . . at which time the user can pull the trigger member (brown) to fire the firearm without having to first release pressure on the trigger member. |
|---|---|
| | |

105. On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '159 Patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Super Safety and Kubota while selling products.

106. On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 1 of the '159 Patent.

107. On information and belief, Defendant also contributes to the infringement of the '159 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Super Safety and Kubota, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed

90

and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '159 Patent.

108. Defendant has engaged in egregious infringement behavior with knowledge of the '159 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '159 Patent and that the '159 Patent is valid at least through the service of Plaintiffs' Complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '159 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '159 Patent.

109. By its actions, Defendant has injured Plaintiffs and are liable to Plaintiffs for infringement of the '159 Patent pursuant to 35 U.S.C. § 271.

110. By its actions, Defendant's infringement of the '159 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

111. By its actions, Defendant's infringement of the '159 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

112. Defendant's infringement of the '159 Patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

113. Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

91

114. Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## <u>COUNT V — INFRINGEMENT OF THE '223 PATENT</u>

115. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

116. In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '223 Patent, including but not limited to claim 4, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '223 Patent. Such unlicensed products include the Selektor.

117. On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '223 Patent, including but not limited to claim 4, literally and/or under the doctrine of equivalents.

118. An exemplary comparison of the Selektor, when assembled and used as intended, with claim 4 of the '223 Patent is illustrated in the chart below:

| '223 Patent Claim 4 | The Selektor |
|---|---|
| 4. For a firearm having a receiver with a fire control mechanism pocket, assembly pin openings in side walls of the pocket, | The Selektor is for an AR-pattern firearm, which has a lower receiver with a fire control pocket and assembly pin openings in side walls of the pocket. |

| '223 Patent Claim 4 | The Selektor |
|---|---|
| | **Fire Control Mechanism Pocket** |
| and a bolt carrier that reciprocates and pivotally displaces a hammer when cycled, a trigger mechanism, comprising: | An AR-pattern firearm has a bolt carrier that reciprocates and pivotally displaces a hammer when cycled. **Bolt Carrier** |
| a housing having transversely aligned pairs of openings for receiving hammer and trigger assembly pins; | The Selektor has a housing with transversely aligned pairs of openings for receiving hammer and trigger assembly pins. Openings    Housing |
| a hammer having a sear notch and mounted in the housing to pivot on a transverse axis between set and released positions; | The Selektor includes a hammer with a sear notch and is mounted in the housing to pivot on a transverse axis. |

93

| '223 Patent Claim 4 | The Selektor |
|---|---|
| | |
| a trigger member having a sear and mounted in the housing to pivot on a transverse axis between set and released positions, | The Selektor has a trigger member that has a sear and is mounted in a housing to pivot on a transverse axis.<br><br> |
| the trigger member having a surface positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled, | The trigger member has a surface positioned to be contacted by a surface of the hammer when the hammer is displaced by the bolt carrier when cycled.<br><br> |
| the contact causing the trigger member to be forced to the set position; | The hammer pivots rearward causing the trigger to be mechanically moved to the set position. |

94

CORE/3536140.0008/247833044.2

| '223 Patent Claim 4 | The Selektor |
|---|---|
| a locking bar pivotally mounted in the housing and spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position,<br><br>and movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position in which the trigger member can be moved by an external force to the released position. | The Selektor includes a locking bar that is pivotally mounted in the housing.<br><br><br><br>The locking bar is spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position.<br><br>The locking bar is movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position. In this position, the trigger member can be moved by an external force (pull by the trigger finger) to the released position. |

119. On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '223 Patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Selektor while selling products.

120. On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 4 of the '223 Patent.

121. On information and belief, Defendant also contributes to the infringement of the '223 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by

95

Defendant of the components of the Selektor, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '223 Patent.

122. Defendant has engaged in egregious infringement behavior with knowledge of the '223 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '223 Patent and that the '223 is valid at least through the service of Plaintiffs' Complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '223 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '223 Patent.

123. By its actions, Defendant has injured Plaintiffs and are liable to Plaintiffs for infringement of the '223 Patent pursuant to 35 U.S.C. § 271.

124. By its actions, Defendant's infringement of the '223 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

125. By its actions, Defendant's infringement of the '223 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

126. Defendant's infringement of the '223 Patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

127. Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

96

128. Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT VI — INFRINGEMENT OF THE '003 PATENT

129. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

130. In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '003 Patent, including but not limited to claim 4, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '003 Patent. Such unlicensed products include the Selektor.

131. On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '003 Patent, including but not limited to claim 4, literally and/or under the doctrine of equivalents.

132. An exemplary comparison of the Selektor, when assembled and used as intended, with claim 4 of the '003 Patent is illustrated in the chart below:

| '003 Patent Claim 4 | The Selektor |
| --- | --- |
| 4. A firearm trigger mechanism comprising: | The Selektor is a firearm trigger mechanism. |
| a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin, | The Selektor includes a housing that has a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin. |

97

CORE/3536140.0008/247833044.2

| '003 Patent Claim 4 | The Selektor |
|---|---|
| | |
| a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The Selektor includes a hammer that has a sear catch and a hook for engaging a disconnector. It is mounted in the housing to pivot on the hammer pin between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier.<br><br> |
| a trigger member having a sear and mounted in said housing to pivot on said trigger member pin between set and released positions, | The Selektor includes a trigger member that has a sear and is mounted in the housing to pivot on the trigger member pin between set and released positions.<br><br> |
| said trigger member having a surface positioned to be contacted by a surface of said hammer during rearward pivoting of | The trigger member has a surface positioned to be contacted by a surface of the hammer during rearward pivoting of said hammer. |

98

CORE/3536140.0008/247833044.2

| '003 Patent Claim 4 | The Selektor |
|---|---|
| said hammer to cause said trigger member to be forced to said set position, | Hammer surface / Trigger surface

The hammer pivots rearward causing the trigger to be mechanically moved to the set position. |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are engaged in the set position and out of engagement in the released position |
| a disconnector having a hook for engaging said hammer and mounted in said housing to pivot on said trigger member pin, | The Selektor has a disconnector that has a hook for engaging the hammer hook. The disconnect is mounted in the housing to pivot on the trigger member pin.

Disconnector |
| a locking member mounted in said housing to pivot on a transverse locking member pin, | The Selektor has a locking member that is mounted in the housing and it pivots on a transverse locking member pin.

Locking bar / Pivot |

99

| '003 Patent Claim 4 | The Selektor |
|---|---|
| said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | When the locking bar is in the first position, the locking member blocks the trigger from being pulled. When the locking bar is in the second position, it does not prevent the trigger from being pulled. The locking member is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position. |
| a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, | The Selektor is configured to receive a safety selector (sold separately by Defendant) that is mounted in the fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and "forced reset" semi-automatic positions.<br><br>Safety selector<br> |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook,<br><br>at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot | While in the standard semi-automatic position, rearward movement of the bolt carrier causes the hammer to pivot and the disconnect hook catches the hammer hook. |

100

CORE/3536140.0008/247833044.2

| '003 Patent Claim 4 | The Selektor |
|---|---|
| to said set positions so that the user can pull said trigger member to fire the firearm, and | |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When the Selektor is in the "forced reset" semi-automatic position, rearward movement of the bolt carrier causes the hammer to pivot which causes the trigger to be mechanically moved to the set position. The safety selector prevents the disconnector hook from catching the hammer hook. When the bolt carrier reaches a substantially in-battery position the user can pull the trigger without manually releasing pressure off the trigger. |

133. On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '003 Patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use and the Selektor while selling products.

134. On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 4 of the '003 Patent.

135. On information and belief, Defendant also contributes to the infringement of the '003 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Selektor, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '003 Patent.

CORE/3536140.0008/247833044.2

136. Defendant has engaged in egregious infringement behavior with knowledge of the '003 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '003 Patent and that the '003 Patent is valid at least through the service of the Plaintiffs' Complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '003 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '003 Patent.

137. By its actions, Defendant has injured Plaintiffs and are liable to Plaintiffs for infringement of the '003 Patent pursuant to 35 U.S.C. § 271.

138. By its actions, Defendant's infringement of the '003 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

139. By its actions, Defendant's infringement of the '003 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

140. Defendant's infringement of the '003 Patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

141. Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

142. Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction,

damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT VII — INFRINGEMENT OF THE '336 PATENT

143. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

144. In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '336 Patent, including but not limited to claim 3, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '336 Patent. Such unlicensed products include the Selektor.

145. On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '336 Patent, including but not limited to claim 3, literally and/or under the doctrine of equivalents.

146. An exemplary comparison of the Selektor, when assembled and used as intended, with claim 3 of the '336 Patent is illustrated in the chart below:

| '336 Patent Claim 3 | The Selektor |
| --- | --- |
| 3. A firearm trigger mechanism comprising: | The Selektor is a firearm trigger mechanism. |
| a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin, | The Selektor includes a housing that has a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin. |

| '336 Patent Claim 3 | The Selektor |
|---|---|
| |  |
| a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The Selektor includes a hammer that has a sear catch and a hook for engaging a disconnector. It is mounted in the housing to pivot on the hammer pin between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier.<br><br> |
| a trigger member having a sear and mounted in said housing to pivot on said trigger member pin between set and released positions, said trigger member having a surface positioned to be contacted by a surface of said hammer during rearward pivoting of said hammer to cause said trigger member to be forced to said set position. | The Selektor includes a trigger member that has a sear and is mounted in the housing to pivot on the trigger member pin.<br><br><br><br>The trigger member has a surface positioned to be contacted by a surface of the hammer during rearward pivoting of said hammer. The hammer |

104

| ’336 Patent Claim 3 | The Selektor |
|---|---|
| | pivots rearward causing the trigger to be mechanically moved to the set position.<br><br><br><br>Hammer surface — Trigger surface |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are engaged in the set position. The sear and sear catch are out of engagement in the released position. |
| a disconnector having a hook for engaging said hammer and mounted in said housing to pivot on said trigger member pin, | The Selektor has a disconnector that has a hook for engaging the hammer hook. The disconnector is mounted in the housing to pivot on the trigger member pin.<br><br><br><br>Disconnector |
| a locking member mounted in said housing to pivot on a transverse locking member pin, said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, said locking member spring biased toward | The Selektor has a locking member that is mounted in the housing and it pivots on a transverse locking member pin. When the locking bar is in the first position, the locking member blocks the trigger from being pulled. When the locking bar is in the second position, it does not prevent the trigger from being pulled. The locking member is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position. |

CORE/3536140.0008/247833044.2

| '336 Patent Claim 3 | The Selektor |
|---|---|
| said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and |  |
| a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, said safety selector configured such that, when said safety selector is in said forced reset semi-automatic position, said safety selector causes said disconnector to be repositioned and in doing so prevents said disconnector hook from catching said hammer hook, | The Selektor is configured to receive a safety selector (sold separately by Defendant) that is mounted in the fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and "forced reset" semi-automatic positions. While in the "forced reset" semi-automatic position the disconnect moves to a position that does not allow the disconnector hook to catch the hammer hook.  |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, | While in the standard semi-automatic position, rearward movement of the bolt carrier causes the hammer to pivot and the disconnect hook catches the hammer hook. |

CORE/3536140.0008/247833044.2

| '336 Patent Claim 3 | The Selektor |
|---|---|
| and whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When the Selektor is in the "forced reset" semi-automatic position, rearward movement of the bolt carrier causes the hammer to pivot which causes the trigger to be mechanically moved to the set position. The safety selector prevents the disconnector hook from catching the hammer hook. When the bolt carrier reaches a substantially in-battery position the user can pull the trigger without manually releasing pressure off the trigger. |

147. On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '336 Patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use and the Selektor while selling products.

148. On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 3 of the '336 Patent.

149. On information and belief, Defendant also contributes to the infringement of the '336 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Selektor, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '336 Patent.

150. Defendant has engaged in egregious infringement behavior with knowledge of the '336 Patent, which has been duly issued by the USPTO, and is presumed valid. On information

CORE/3536140.0008/247833044.2

and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '336 Patent and that the '336 Patent is valid at least through the service of Plaintiffs' Complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '336 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '336 Patent.

151. By its actions, Defendant has injured Plaintiffs and are liable to Plaintiffs for infringement of the '336 Patent pursuant to 35 U.S.C. § 271.

152. By its actions, Defendant's infringement of the '336 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

153. By its actions, Defendant's infringement of the '336 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

154. Defendant's infringement of the '336 Patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

155. Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will. Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

CORE/3536140.0008/247833044.2

## COUNT VIII — INFRINGEMENT OF THE '807 PATENT

156.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

157.    In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '807 Patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '807 Patent. Such unlicensed products include the Selektor.

158.    On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '807 Patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

159.    An exemplary comparison of the Selektor, when assembled and used as intended, with claim 1 of the '807 Patent is illustrated in the chart below:

| '807 Patent Claim 1 | The Selektor |
| --- | --- |
| A firearm trigger mechanism comprising: | The Selektor is a firearm trigger mechanism. |
| a hammer having a sear catch and a hook and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The Selektor includes a hammer that has a sear catch and a hook for engaging a disconnector. It is mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier. |

CORE/3536140.0008/247833044.2

| '807 Patent Claim 1 | The Selektor |
|---|---|
| | Hammer |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Selektor includes a trigger member that has a sear and is mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions.<br><br>Trigger Axis<br><br>Trigger |
| said trigger member having a surface positioned to be contacted by a surface of said hammer during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | The trigger member has a surface positioned to be contacted by a surface of the hammer. The hammer pivots rearward causing the trigger to be mechanically moved to the set position.<br><br>Hammer surface    Trigger surface |

110

| '807 Patent Claim 1 | The Selektor |
|---|---|
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are engaged in the set position, and are out of engagement in the released position. |
| a disconnector having a hook for engaging said hammer hook and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The Selektor has a disconnector that has a hook for engaging the hammer hook. The disconnect is mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis.<br><br>Disconnector<br> |
| a locking member adapted to be movably mounted in the fire control mechanism pocket, said locking member being movable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | The Selektor has a locking member that is movably mounted in the fire control mechanism pocket and it is movable between a first position and a second position. When the locking bar is in the first position, the locking member blocks the trigger from being pulled. When the locking bar is in the second position, it does not prevent the trigger from being pulled. The locking member is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position.<br><br>Locking bar<br><br>Pivot |
| a safety selector adapted to be movably mounted in the fire | The Selektor is configured to receive a safety selector (sold separately by Defendant) that is mounted in the |

111

| '807 Patent Claim 1 | The Selektor |
|---|---|
| control mechanism pocket to move between safe, standard semi-automatic, and forced reset semi-automatic positions, | fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and "forced reset" semi-automatic positions.<br><br> |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer to pivot and the disconnect hook catches the hammer hook. |

112

| '807 Patent Claim 1 | The Selektor |
|---|---|
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When the Selektor is in the "forced reset" semi-automatic position rearward movement of the bolt carrier causes the hammer to pivot which causes the trigger to be mechanically moved to the set position. The safety selector prevents the disconnector hook from catching the hammer hook. When the bolt carrier reaches a substantially in-battery position the user can pull the trigger without manually releasing pressure off the trigger. |

160. On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '807 Patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use and the Selektor while selling products.

161. On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 1 of the '807 Patent.

162. On information and belief, Defendant also contributes to the infringement of the '807 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Selektor, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '807 Patent.

163. Defendant has engaged in egregious infringement behavior with knowledge of the '807 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '807 Patent and that the '807 Patent is valid at least through the service of Plaintiffs' Complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '807 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '807 Patent.

164. By its actions, Defendant has injured Plaintiffs and are liable to Plaintiffs for infringement of the '807 Patent pursuant to 35 U.S.C. § 271.

165. By its actions, Defendant's infringement of the '807 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

166. By its actions, Defendant's infringement of the '807 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

167. Defendant's infringement of the '807 Patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

168. Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

169. Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction,

114

damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

<h3 style="text-align:center">COUNT IX — INFRINGEMENT OF THE '403 PATENT</h3>

170. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

171. In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '403 Patent, including but not limited to claim 38, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '403 Patent. Such unlicensed products include the Infringing Devices.

172. On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '403 Patent, including but not limited to claim 38, literally and/or under the doctrine of equivalents.

173. An exemplary comparison of the Super Safety, when assembled and used as intended, with claim 38 of the '403 Patent is illustrated in the chart below:

| '403 Patent Claim 38 | The Super Safety |
|---|---|
| 38. A forced reset trigger mechanism, comprising: | When installed and used as directed, the Super Safety is part of a trigger mechanism. |

CORE/3536140.0008/247833044.2

| '403 Patent Claim 38 | The Super Safety |
|---|---|
| | **Super Safety** Ex. J, Super Safety Printed Active Trigger System v4.4, Hoffman Tactical (July 19, 2023) ("Super Safety Guide") at 12. |
| a hammer having a hammer hook and adapted to pivot on a transverse hammer pivot axis; | The Super Safety (yellow) is installed in a fire control mechanism pocket along with a hammer (red) that has a hammer hook and pivots on a transverse axis. |

116

| '403 Patent Claim 38 | The Super Safety |
|---|---|
| | <br><br>**Super Safety (Installed)**<br><br>(Plaintiff-generated renderings of Super Safety here and below) |
| a disconnector having a disconnector hook and adapted to pivot on a transverse disconnector pivot axis;<br><br>a trigger member; and | The Super Safety is installed along with a disconnector (orange) which has a disconnector hook and pivots on a transverse disconnector pivot axis, and a trigger member (brown)<br><br><br><br>**Disconnector and Trigger Member** |

CORE/3536140.0008/247833044.2

Case 3:26-cv-05070-DPR     Document 1     Filed 08/05/26     Page 117 of 136

| | |
|---|---|
| a safety selector adapted to be movable between a standard semi-automatic position and a forced reset semi-automatic position, | The Super Safety is a safety selector adapted to be movable between a standard semi-automatic position,  **Super Safety (installed) in Standard Semi-Automatic Position** . . . and a "forced reset" semi-automatic position,  **Super Safety (installed) in "Forced Reset" Semi-Automatic Position** |

CORE/3536140.0008/247833044.2

| | |
|---|---|
| wherein when the safety selector is in the standard semi-automatic position and the trigger member is rearwardly actuated, | When safety selector is in the standard semi-automatic position the trigger member (brown) is rearwardly actuated.<br><br> |
| and after the hammer pivots rearward to a position where the hammer hook is past the disconnector hook, | The hammer (red) pivots rearward to a position where the hammer hook is past the disconnector hook (orange),<br><br><br><br>**Hammer Hook is Past Disconnector Hook** |

119

CORE/3536140.0008/247833044.2

| | |
|---|---|
| rearward pressure on the trigger member must be reduced to permit the trigger member to then be actuated to fire a firearm. | Rearward pressure on the trigger member (brown) must be reduced to permit the trigger member to then be actuated to fire a firearm.  **Pressure Must be Reduced** |

174.     An exemplary comparison of the Kubota, when assembled and used as intended, with claim 38 of the '403 Patent is illustrated in the chart below:

CORE/3536140.0008/247833044.2

| '403 Patent Claim 38 | The Kubota |
|---|---|
| 38. A forced reset trigger mechanism, comprising: | When installed and used as directed, the Kubota is part of a reset trigger mechanism.<br><br><br><br><br><br>**Kubota** |

CORE/3536140.0008/247833044.2

| '403 Patent Claim 38 | The Kubota |
|---|---|
| a hammer having a hammer hook and adapted to pivot on a transverse hammer pivot axis; | The Kubota (yellow, blue, and purple) is installed in a fire control mechanism pocket along with a hammer (red) that has a hammer hook and is adapted to pivot on a transverse hammer pivot axis.<br><br><br><br>**Kubota (Installed)**<br><br>(Plaintiff-generated renderings of Kubota here and below) |
| a disconnector having a disconnector hook and adapted to pivot on a transverse disconnector pivot axis;<br><br>a trigger member; and | The Kubota is installed along with a disconnector **(orange)** which has a disconnector hook and is adapted to pivot on a transverse disconnector pivot axis, and a trigger member **(brown)**.<br><br><br><br>**Disconnector and Trigger Member** |

122

| '403 Patent Claim 38 | The Kubota |
|---|---|
| a safety selector adapted to be movable between a standard semi-automatic position | The Kubota interacts with a safety selector adapted to be movable between a standard semi-automatic position,<br><br><br><br>**Kubota (installed) in Standard Semi-Automatic Position** |
| and a forced reset semi-automatic position, | . . . and a "forced reset" semi-automatic position,<br><br><br><br>**Kubota (installed) in "Forced Reset" Semi-Automatic Position** |

123

| '403 Patent Claim 38 | The Kubota |
|---|---|
| wherein when the safety selector is in the standard semi-automatic position and the trigger member is rearwardly actuated, | When safety selector is in the standard semi-automatic position the trigger member (brown) is rearwardly actuated.<br> |
| and after the hammer pivots rearward to a position where the hammer hook is past the disconnector hook, | The hammer (red) pivots rearward to a position where the hammer hook is past the disconnector hook (orange),<br> |

CORE/3536140.0008/247833044.2

| '403 Patent Claim 38 | The Kubota |
|---|---|
| rearward pressure on the trigger member must be reduced to permit the trigger member to then be actuated to fire a firearm. | Rearward pressure on the trigger member (brown) must be reduced to permit the trigger member to then be actuated to fire a firearm.  |

175.    An exemplary comparison of the Selektor, when assembled and used as intended, with claim 38 of the '403 Patent is illustrated in the chart below:

| '403 Patent Claim 38 | The Selektor |
|---|---|
| 38. A forced reset trigger mechanism, comprising: | When installed and used as directed, the 3-Position Forced Reset Trigger is part of a trigger mechanism. |
| a hammer having a hammer hook and adapted to pivot on a transverse hammer pivot axis; | The 3-Position Forced Reset Trigger has a hammer that has a hammer hook and pivots on a transverse axis. |

CORE/3536140.0008/247833044.2

| '403 Patent Claim 38 | The Selektor |
|---|---|
| a disconnector having a disconnector hook and adapted to pivot on a transverse disconnector pivot axis; | The 3-Position Forced Reset Trigger has a disconnector which has a disconnector hook and pivots on a transverse disconnector pivot axis.<br><br> |
| a trigger member; and | The 3-Position Forced Reset Trigger has a trigger member that pivots on a transverse pivot axis.<br><br> |
| a safety selector adapted to be movable between a standard semi-automatic position and a forced reset semi-automatic position, | The 3-Position Forced Reset Trigger is configured to receive a safety selector (sold separately by Defendant) adapted to be movable between a (**standard semi-automatic**) position, and a "forced reset" semi-automatic position.<br><br> |

126

| '403 Patent Claim 38 | The Selektor |
|---|---|
| wherein when the safety selector is in the standard semi-automatic position and the trigger member is rearwardly actuated, and after the hammer pivots rearward to a position where the hammer hook is past the disconnector hook, rearward pressure on the trigger member must be reduced to permit the trigger member to then be actuated to fire a firearm. | When safety selector is in the standard semi-automatic position the trigger member is rearwardly actuated. The hammer pivots rearward to a position where the hammer hook is past the disconnector hook, rearward pressure on the trigger member must be reduced to permit the trigger member to then be actuated to fire a firearm. |

176. On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '403 Patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Infringing Devices while selling products.

177. On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 38 of the '403 Patent.

178. On information and belief, Defendant also contributes to the infringement of the '403 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Infringing Devices, such as the cam or cam lever arm or the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '403 Patent.

CORE/3536140.0008/247833044.2

179. Defendant has engaged in egregious infringement behavior with knowledge of the '403 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '403 Patent and that the '403 Patent is valid at least through the service of Plaintiffs' Complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '403 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '403 Patent.

180. By its actions, Defendant has injured Plaintiffs and are liable to Plaintiffs for infringement of the '403 Patent pursuant to 35 U.S.C. § 271.

181. By its actions, Defendant's infringement of the '403 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

182. By its actions, Defendant's infringement of the '403 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

183. Defendant's infringement of the '403 Patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

184. Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

185. Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction,

CORE/3536140.0008/247833044.2

damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT X — FEDERAL TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1114(1)

186. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

187. As described above, Plaintiff RBTM is the owner and Plaintiff Rare Breed is the exclusive licensee of the FRT Marks in connection with firearm triggers.

188. The federal trademark registrations for the FRT Marks as detailed above are in full force and effect. Plaintiff RBTM owns all right, title, and interest in and to these federal trademark registrations.

189. The FRT Marks are inherently distinctive and have acquired significant goodwill in the marketplace through Plaintiffs' continuous and substantially exclusive use of those marks in commerce. As a result of their widespread and continuous use, the FRT Marks have become uniquely associated in the minds of consumers and the trade with Plaintiffs.

190. The reputation Plaintiffs have built in the FRT Marks is of great value to Plaintiffs.

191. Plaintiffs' use of and rights in the FRT Marks predate any use by Defendant of FRT.

192. Defendant is wrongfully using FRT as a source identifier in U.S. commerce in connection with the distribution, advertising, and/or sale of firearm trigger products.

193. Defendant's use of the FRT Marks was and is without Plaintiffs' consent. Such unauthorized use by Defendant is likely to confuse consumers as to the origin, sponsorship, endorsement, or affiliation of Defendant's products, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

129

194. Defendant's unlawful acts have caused and, unless enjoined by this Court pursuant to 15 U.S.C. § 1116, will continue to cause, great harm and irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law, including undermining consumers' association of the FRT Marks with Plaintiffs.

195. Plaintiffs are entitled to injunctive relief prohibiting Defendant from using the FRT Marks and any mark confusingly similar to the FRT Marks.

196. Upon information and belief, Defendant has realized unjust profits, gains, and advantages from its unlawful actions, including by making sales under the FRT Marks, and has caused Plaintiffs monetary damage in an amount to be determined at trial.

## COUNT XI — FALSE DESIGNATION OF ORIGIN
## 15 U.S.C. § 1125(A)

197. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

198. As described above, Plaintiff RBTM owns and Plaintiff Rare Breed is the exclusive licensee of the distinctive FRT Marks in connection with firearm triggers through their continuous and substantially exclusive use of the FRT Marks since at least as early as 2020, which is well before any use of FRT by Defendant.

199. Plaintiffs' common law rights in the FRT Marks predate Defendant's infringing use of FRT and any other confusingly similar name or mark comprised of or containing FRT.

200. Defendant is using FRT as a source identifier in U.S. commerce in connection with the distribution, advertising, and/or sale of firearm trigger products.

201. Defendant's actions described above constitute use of a false designation of origin that wrongfully and falsely designates the origin of Defendant's goods and services and is likely to cause confusion or mistake and/or to deceive as to affiliation, connection, or association or as

130

to the origin, sponsorship, or approval of Defendant's goods by Plaintiffs. These actions constitute a false designation of origin in interstate commerce in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

202.     Defendant's unlawful acts, which were committed and continue to be committed with full knowledge of Plaintiffs' prior rights in the FRT Marks, are knowing, willful, and done in bad faith.

203.     Defendant's acts have caused and, unless enjoined by this Court pursuant to 15 U.S.C. § 1116, will continue to cause, great harm and irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law, including undermining consumers' association of the FRT Marks with Plaintiffs.

204.     Plaintiffs are entitled to injunctive relief prohibiting Defendant from using the FRT Marks or any other mark confusingly similar to the FRT Marks.

205.     Upon information and belief, Defendant has realized unjust profits, gains, and advantages from its unlawful actions, including by making sales under the FRT Marks, and has caused Plaintiffs monetary damage in an amount to be determined at trial.

## <u>COUNT XII — COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION</u>

206.     Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

207.     As described above, Plaintiff RBTM owns and Plaintiff Rare Breed is the exclusive licensee of the distinctive FRT Marks in connection with firearm triggers through their continuous use of the marks since at least as early as 2020, prior to any use of FRT by Defendant.

208.     Plaintiffs' common law rights in the FRT Marks predate Defendant's infringing use of FRT and/or other confusingly similar marks comprised of or containing FRT.

CORE/3536140.0008/247833044.2

209. Defendant is using FRT as a source identifier in U.S. commerce in connection with the distribution, sale, offering for sale, and advertising of firearm triggers.

210. Defendant's use of FRT was and is without Plaintiffs' consent. Such unauthorized use by Defendant is likely to confuse consumers as to the origin, sponsorship, endorsement, or affiliation of Defendant's goods and services. As such, Defendant's acts constitute trademark infringement and unfair competition under common law.

211. Defendant's unlawful acts, which were committed and continue to be committed with full knowledge of Plaintiffs' prior common law rights in the FRT Marks are knowing, willful, and done in bad faith.

212. Defendant's acts have caused and, unless enjoined by this Court, will continue to cause great harm and irreparable injury to Plaintiffs for which it has no adequate remedy at law, including undermining consumers' association of the FRT Marks with Plaintiffs.

213. Plaintiffs are entitled to injunctive relief prohibiting Defendant from using FRT or any other mark confusingly similar to the FRT Marks.

214. Upon information and belief, Defendant has realized unjust profits, gains, and advantages from its unlawful actions, including by making sales under the FRT mark, and has caused Plaintiffs monetary damage in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendant as follows:

a. Each of the Asserted Patents has been and continues to be infringed by Defendant;

b. Defendant's infringement of each of the Asserted Patents has been, and continues to be, willful;

c. Each of the Asserted Patents is enforceable and not invalid;

132

d. That Defendant willfully infringed Plaintiffs' registered FRT Marks in violation of the Lanham Act, 15 U.S.C. § 1114;

e. That Defendant committed willful acts of false designation of origin through its unauthorized use of the FRT Marks in violation of the Lanham Act, 15 U.S.C. § 1125(a);

f. That Defendant engaged in conduct constituting unfair competition under applicable law;

g. A preliminary injunction enjoining Defendant and its principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from (1) infringement or contributing to the infringement of each of the Asserted Patents during the pendency of this case; (2) using the mark "FRT" (or any similar or derivative term, including any FRT-formative term) (i) in association with firearm triggers or any related products, (ii) in any other manner that creates confusion or is likely to create confusion with Plaintiffs or Plaintiffs' FRT Marks, (iii) in any way constitutes unfair competition with Plaintiffs; or (3) other such equitable relief as the Court determines is warranted;

h. A permanent injunction enjoining Defendant and its principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from (1) infringement or contributing to the infringement of each of the Asserted Patents; (2) using the mark "FRT" (or any similar or derivative term, including any FRT-formative term) (i) in association with firearm triggers or any related products, (ii) in any other manner that creates confusion or is likely to create confusion with Plaintiffs or Plaintiffs' FRT Marks, (iii) in any way constitutes unfair competition with Plaintiffs; or (3) other such equitable relief as the Court determines is warranted;

133

i.     Consistent with the above, order Defendant to (1) remove from display any advertisements and marketing, promotional, or sales materials comprising, bearing, or displaying the FRT Marks or any similar or derivative term that infringes or is likely to be confused with the FRT Marks, including any FRT-formative term, including from all Internet webpages and social media accounts within Defendant's custody or control; and (2) deliver to the Court for destruction, or to show proof of destruction of, any and all physical advertisements and marketing, promotional materials, and sales materials comprising, bearing, or displaying the term "FRT" or any similar or derivative term that infringes or is likely to be confused with the FRT Marks, including any FRT-formative term;

j.     An award of damages adequate to compensate Plaintiffs for the infringement of each of the Asserted Patents that has occurred, together with pre-judgment interests and costs, post-judgment interests and costs, and an accounting;

k.     An award of all other damages permitted by 35 U.S.C. § 284 and 15 U.S.C. § 1117(a), including increased damages up to three times the amount of compensatory damages found;

l.     An award of all profits received by Defendant from sales and revenues of any kind made as a result of its trademark infringement and unfair competition;

m.     An award of all damages sustained by Plaintiffs as a result of Defendant's infringement and unfair competition, including ascertainable damages, the costs incurred by Plaintiffs for corrective advertising, the costs for this action, and Plaintiffs' reasonable attorneys' fees;

n.    A finding that this action is an exceptional case under 35 U.S.C. § 285 and 15 U.S.C. § 1117, and an award to Plaintiffs of their costs and attorneys' fees incurred in this action; and

o.    Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled or which this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

DATED: August 5, 2026                    Respectfully submitted,

*/s/ David R. Barnard*
David R. Barnard, #47127MO
**STINSON LLP**
1201 Walnut St., Suite 2900
Kansas City, MO 64106
Tel: (816) 691-2608
Fax: (816) 412-1017
E-mail: david.barnard@stinson.com

B. Scott Eidson, #57757MO
Jacob R. Schlueter, #73929MO
**STINSON LLP**
7700 Forsyth Blvd, Suite 1100
St. Louis, MO 63105
Tel: 314.863.0800
Fax: 314.259.3924
E-mail: scott.eidson@stinson.com
E-mail: jacob.schlueter@stinson.com

Glenn D. Bellamy *(Pro Hac Vice* forthcoming)
Ohio Bar No. 00700321
**WOOD HERRON & EVANS LLP**
600 Vine Street, Suite 2800
Cincinnati OH 45202
Tel: (513) 707-0243
Fax: (513) 241-6234
E-mail: gbellamy@whe-law.com

135

Matthew A. Colvin (*Pro Hac Vice* forthcoming)
Texas Bar No. 24087331
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
Tel: (214) 747-5070
Fax: (214) 747-2091
E-mail: colvin@fr.com

Decker A. Cammack (*Pro Hac Vice* forthcoming)
Texas Bar No. 24036311
**WHITAKER, CHALK, SWINDLE &
SCHWARTZ, PLLC**
301 Commerce Street, Suite 3500
Fort Worth, TX 76102
E-mail: dcammack@whitakerchalk.com
Tel: (817) 878-0500

*Attorneys for Plaintiffs*
*ABC IP, LLC, Rare Breed Triggers, Inc., and*
*RBTM LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2026, I electronically transmitted the foregoing

document to the Clerk of the Court using the CM/ECF system which sent notification of such

filing to all counsel of record.

/s/ *David R. Barnard*
ATTORNEY FOR PLAINTIFFS

CORE/3536140.0008/247833044.2